**E-Filed 8/4/2010**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| BRIAN P. FROELICH, an individual,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SEQUOIA LEISURE HOLDINGS, INC., and DAVID A. MARSHALL,<br><br>　　　　　　Defendants. | Case Number C 10-0780 JF<br><br>ORDER[1] GRANTING MOTION TO TRANSFER VENUE<br><br>[Docket no. 5] |

　　　　Plaintiff Brian Froelich ("Froelich") moves pursuant to 28 U.S.C. § 1404(a) to transfer venue to the District of New Jersey. The Court has considered the moving papers, the declarations, and the oral arguments of counsel presented at the hearing on July 30, 2010. For the reasons discussed below, the motion will be granted.

## I. BACKGROUND

　　　　In or about March 2009, Defendant David Marshall ("Marshall") and non-party Terry Beard were shareholders and owners of Defendant Sequoia Leisure Holdings, Inc. ("Sequoia"). (Comp. ¶ 6.) Plaintiff alleges that Sequoia was the sole owner of Bogar, Inc. ("Bogar") d/b/a

---

[1] This disposition is not designated for publication and may not be cited.

Happy Vacations, an internet-based travel agency. (Compl ¶ 7.) In March 2009, Bogar had outstanding debt of $373,000, and it was notified by one of its vendors that failure to pay the entire balance immediately would result in termination of Bogar's business services. (Compl. ¶¶ 9-10.) Marshall contacted Froelich to request a loan. (Compl. ¶ 12.) Froelich alleges that he agreed to loan money to Marshall, Bogar, and Sequoia, subject to the parties' subsequent agreement to certain terms and the execution of various notes, guarantees, mortgages and security agreements. (Compl. ¶ 13; Pl.'s Mot. to Transfer 3:7-10, May 25, 2010.) The amount of the loan was to be determined later.

Froelich alleges that Marshall made a number of material misrepresentations or omissions to induce him to transfer the sum of $373,000 before the necessary documents had been executed. The statements in question concerned: (1) Marshall's actual ownership interest in and ability to convey a second priority mortgage to property located in Honolulu, Hawaii (the "Marshall Property") (Compl. ¶ 15); (2) the existence of prior mortgages, liens, and encumbrances against the Marshall Property. (Compl. ¶ 16); (3) Beard's willingness to execute a subordination and forbearance agreement (Compl. ¶ 17); and (4) Marshall's ability to grant Froelich an unencumbered security interest in 45,000 shares of Sequoia stock (Compl. ¶ 18.)

Froelich alleges that after his conversation with Marshall, he transferred $373,000 to Bogar and Sequoia. On or about March 25, 2009, Bogar and Sequoia executed an "Amended and Restated Guaranteed and Secured Promissory Note" (the "Note") pursuant to which Froelich would lend $500,000 to Defendants. (Compl. ¶ 22.; Whitehouse Decl. Ex. A, May 25, 2010.) The Note includes the following forum selection clause:

> SECTION 8. Governing Law
> 8.1 This Note shall be governed by and construed in accordance with the laws of the State of New Jersey applicable to agreements made and to be performed entirely within such State.
> . . . .
> 8.3 The parties to this Note further agree that any suit for the enforcement of this Note or any of the other loan documents executed in connection herewith may be brought in the courts of the State of New Jersey or any federal court sitting therein and consents to the nonexclusive jurisdiction of such court and service of process in any such suit being made upon the Makers [Bogar and Sequoia] by mail at the address set forth in this Agreement. The parties to this Agreement hereby waive any objection that it may now or hereafter

2

Case No. C 10-0780 JF
ORDER GRANTING MOTION TO TRANSFER VENUE
(JFEX2)

>have to the venue of any such suit or any such court or that such suit is brought in an inconvenient forum.

Marshall also executed an "Amended and Restated Guaranty" (the "Guarantee") and a stock pledge agreement . (Compl. ¶¶ 34, 38; Whitehouse Decl. Ex. B.) The Guarantee contains the same forum selection clause as the Note. Bogar and Sequoia subsequently defaulted on their obligations under the Note, and Froelich did not transfer the remaining $127,000. Froelich alleges that despite his demand for repayment, Defendants have refused to honor the Note and Guarantee. (Compl. ¶ 42.) On or about April 23, 2009, Bogar filed a voluntary bankruptcy petition pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. (Compl. ¶ 43.)

On June 5, 2009, pursuant to 28 U.S.C. § 1332, Froelich filed the instant action in the United States District Court for the District of New Jersey, asserting claims for: (1) breach of contract against Sequoia; (2) breach of contract against Marshall; (3) declaratory judgment against Marshall pursuant to the stock pledge agreement; (4) fraud against Marshall; and (5) breach of the implied faith of good faith and fair dealing against all Defendants. Although Bogar was not a named defendant, the district court entered an order transferring the action to this Court, where it was related to the Bogar bankruptcy matter. On January 26, 2010, the bankruptcy case was closed, *Froelich v. Sequoia Leisure Holdings, Inc.*, No. 09-53046 (Bankr. N.D. Cal. filed Jan. 26, 2010), and on May 6, 2010 the reference of the instant action to the bankruptcy court was withdrawn, *Froelich v. Sequoia Leisure Holdings, Inc.*, No. 10-0780 (N.D. Cal. filed May 6, 2010). On May 25, 2010, Froelich filed the instant motion for transfer to the District of New Jersey.

## II.  LEGAL STANDARD

28 U.S.C. § 1404(a) provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A motion for transfer pursuant to § 1404(a) lies within the discretion of the court. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  The decision whether to grant such a motion turns on the facts of the particular case. *Id*. A valid

3

forum selection clause evidences consent to personal jurisdiction in that forum. *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007). Other factors to be weighed in deciding a motion for transfer include:  (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. *Jones* at 498-99.

"The presence of a forum-selection clause. . . will be a significant factor that figures" in the district court's decision to transfer under § 1404. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  Forum selection clauses are prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is "unreasonable under the circumstances." *M/S Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). A forum selection clause is unreasonable if:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, (2) the selected forum is so 'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes be deprived of its day in court,' *M/S Breman*, 407 U.S. at 17-18, or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996). *See also Jones,* 211 F.3d at 497; *Craiglist, Inc. v. Naturemarket,* Inc., 694 F. Supp. 2d 1039, 1052-53 (N.D. Cal. 2010) ("The party disputing the validity of a forum selection clause bears the burden of proving the clause is unenforceable."); *Zenger-Miller v. Training Team, GmbH,* 757 F. Supp. 1062, 1069 (N.D. Cal. 1991).

### III. DISCUSSION

**A.    The forum selection clause is valid and enforceable**

Defendants argue that the forum selection clause is not part of their contract with Froelich. Relying upon *Pax, Inc. v. Veolia Water N. Am. Operating Servs.,* 347 F. Supp. 2d 281,

4

284 (W.D. Va. 2004), Defendants observe correctly that Froelich has the burden of showing that the forum selection clause is valid and enforceable. They contend that Froelich cannot meet this burden because the forum selection clause in this case was not supported by consideration and was inserted into the loan documents without notice.

Defendants claim that the parties had reached an agreement as of March 18, 2009, when Froelich transferred the sum of $373,000, and that nothing in that agreement involved forum selection. They argue the forum selection clause in the Note, which was executed a week later, is separate from the March 18 agreement and was without consideration because "[u]nder the pre-existing duty rule, a promise to perform what the promisor is already legally bound to do does not constitute adequate consideration for the counter promise, because there is not exchange of value." (Defs.' Opp'n 5:25-27, July 9, 2010.) However, the pre-existing duty rule presumes a prior valid contract between parties. Because the parties clearly contemplated that their rights and obligations would be articulated in written instruments, the Court concludes that the only valid contract between Froelich and Defendants included the terms of the instruments.

Froelich acknowledges that he advanced money to Defendants before the Note and Guarantee were signed. However, in an email to Marshall dated March 17, 2009, Froelich states explicitly that: "I am considering making the $500k loan to the company. Here are the requirements (and they are subject to review and modification by my attorney). . . ." (Defs.' Opp'n Ex. A.) It is clear from this email that the terms of the loan still were being negotiated and among other things required review by Froelich's attorney.

Defendants admit that they needed to pay their outstanding debt immediately because "[i]nhibition of [Bogar's] air ticketing would have been the proverbial death-knell for Bogar." (Defs.' Opp'n 2:9-12.) Viewed in this light, the fact that Froelich never tendered the full loan amount is immaterial to the issue of whether there was consideration for the Note and Guarantee. Froelich promised to loan Defendants money in exchange for repayment with interest, security, and a forum selection clause; Defendants received funds to pay their debts and run their business. "A single and undivided consideration may be bargained for and given as the agreed equivalent of one promise or of two promises or of many promises. The consideration is not rendered

invalid by the fact that it is exchanged for more than one promise." 2 Jospeh M. Perillo & Helen H. Bender, *Corbin on Contracts:Formation of Contracts* § 5.12 (1995); *see also* Restatement (Second) of Contracts § 80 (1981) ("(1)  There is consideration for a set of promises if what is bargained for and given in exchange would have been consideration for each promise in the set if exchanged for that promise alone. (2)  The fact that part of what is bargained for would not have been consideration if that part alone had been bargained for does not prevent the whole from being consideration.").

Defendants also claim that they had no notice of the forum selection clause. Their position is not supported by the record. Defendants are sophisticated parties and were assisted by counsel in negotiating the subject transaction. The forum selection clause was presented conspicuously in both the Note and the Guarantee, with the heading "Governing Law" appearing in the Note. Defendants' reliance upon *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991), is misplaced. Unlike the plaintiff in that case, which involved a forum selection clause printed on a cruise ticket that already had been purchased and could not be returned, Defendants agreed to the terms of the Note and the Guarantee with aid of counsel and could have rescinded the loan if the written terms were not to their liking.

**B.     Transfer is otherwise reasonable**

Defendants concede that "the forum selection clause require[s] Sequoia and Marshall to give up their right to select their preferred forum." (Defs.' Opp'n 5:13-14, July 7, 2010.) *See also Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 618 (N.D. Cal. 2002) ("A mandatory forum selection clause is presumed valid and is to be strictly enforced.  A permissive forum selection clause, on the other hand, simply means that the parties consent to the jurisdiction of the designated forum.") Thus, Defendants have the "heavy burden" of showing that transfer to the District of New Jersey is unreasonable. *Argueta,* 878 F.3d at 325. Defendants argue that transfer is unreasonable because Froelich's fraud against Marshall is outside the scope of the forum selection clause and that many potential witnesses reside in or live near California. The Court concludes that these considerations do not sufficiently weigh against transfer.

First, although he does allege fraud, Froelich also alleges claims for breach of contract

6

1  and breach of the implied covenant of good faith and fair dealing. These claims clearly are within
2  the scope of the forum selection clause. Second, although Defendants identify seven potential
3  witnesses residing in or living near California (Marshall Decl. ¶ 16, July 9, 2010), evidentiary
4  convenience alone is insufficient to contest transfer pursuant to a forum selection clause. *See*
5  *Carnival Cruises*, 499 U.S. at 587; *Bremen*, 407 U.S. at 13-15.

6       Both *Bremen* and *Carnival Cruises* recognize that forum selection clauses may be
7  bargained for in arm-length transactions for valid reasons other than "discouraging [a plaintiff]
8  from pursuing legitimate claims." *Carnival Cruises*, 499 U.S. at 495; *see Breman*, 407 U.S. at 7-
9  8 ("The expansion of American business and industry will hardly be encouraged if,
10 notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be
11 resolved under our laws and in our courts."). Here, Froelich's reasons for seeking a forum
12 selection clause are obvious.  He is a citizen of New Jersey, and the Note and Guarantee he seeks
13 to enforce were negotiated in New Jersey. *See also Lum v. Scitor Corp.*, No. 09-5828 JF, 2010
14 U.S. Dist. LEXIS 46888, at *6 (N.D. Cal. Apr. 10, 2010) ("[A] plaintiff's choice of forum is
15 accorded substantial weight. . . ."). New Jersey law governs the interpretation of the agreements
16 as well as the calculation of the late fee:

> 1.3 If any payment of principal is not made by the Makers on or before the due date therefor, a late fee shall be due and become payable thereon, on a monthly basis, at the lower of: (i) two percent (2%) per month or (ii) the highest legal contract rate permitted by the laws of the State of New Jersey, in either case, from the due date therefor until the date on which such payment is made.

21 (Whitehouse Decl. Ex. A).

## IV.  ORDER

23     Good cause therefor appearing, the Clerk is hereby directed to transfer this action to the
24 United States District Court for the District of New Jersey.
25 **IT IS SO ORDERED.**

27 DATED: 8/4/2010

                                     _____
                                     JEREMY FOGEL
                                     United States District Judge

Case No. C 10-0780 JF
ORDER GRANTING MOTION TO TRANSFER VENUE
(JFEX2)